JUDGE SULLIVAN

Robert Bergen (RB 9157)
Rebecca L. Misner (RM 8086)
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
599 Lexington Avenue
New York, New York 10022
Telephone:  212-536-3900
Facsimile:   212-536-3901
Email: robert.bergen@klgates.com
Email: rebecca.misner@klgates.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GREENSTREET FINANCIAL, L.P., a Delaware
limited partnership,

                    Plaintiff,

             v.

CS-GRACES, LLC, a New York limited liability
company, and
RH LODGING SERVICES, LLC, a New York limited
liability company,

                    Defendants.
------------------------------------------------------------X

Index No.: _____

07 CIV 8005

**COMPLAINT**



## PARTIES

1.    Plaintiff Greenstreet Financial, L.P. ("Greenstreet" or "Plaintiff") is a limited partnership organized and existing under the laws of Delaware with its principal place of business in Miami-Dade County, Florida.

2.    Upon information and belief, Defendant CS-Graces, LLC ("CS-Graces" or "Defendant") is a limited liability company organized and existing under the laws of New York, whose address is P.O. Box 495, Ellenville, New York 12428.

NY-553519 v4

3. Upon and information and belief, Defendant RH Lodging Services, LLP ("RH Lodging" or "Defendant") is a limited liability company organized and existing under the laws of New York, whose address is 283 Rock Hill Drive, Rock Hill, New York 12775. Upon information and belief, a significant asset of RH Lodging is the Lodge at Rock Hill (the "RH Property") located in Rock Hill, New York.

## DIVERSITY JURISDICTION UNDER 28 U.S.C. §1332

4. Greenstreet is organized in Delaware and its principal place of business is in Miami, Florida.

5. CS-Graces and RH Lodging are organized in New York and have their principal places of business in New York.

6. Complete diversity of citizenship exists under 28 U.S.C. §1332.

7. As reflected in paragraphs 37 and 38 below, the amount in controversy far exceeds $75,000.00 in monetary damages.

## VENUE

8. Defendant CS-Graces resides in Ulster County, New York.

9. Defendant RH Lodging resides in Sullivan County, New York.

10. Both defendants reside in the state of New York and Defendant RH Lodging resides in this judicial district.

11. Additionally, a substantial part of the events giving rise to the claims in this action took place in this judicial district.

12. Venue is proper under 28 U.S.C. §1391(a)(1) and (2).

## FACTS COMMON TO ALL CLAIMS

**Background information**

13. RH Lodging was formed as an LLC in New York in May 2000.

2

14. RH Lodging's initial operating agreement was executed on May 5, 2000.

15. On May 5, 2000, the sole member of RH Lodging was the Sheryl Smul Grantor Annuity Trust (the "Smul Trust").

16. The Smul Trust was created by an agreement dated January 2, 1997, and was extended by amendment.

17. Sheryl Smul is the trustee of the Smul Trust and a resident of Broward County, Florida.

18. Upon information and belief, the initial operating agreement of RH Lodging was amended twice and was then amended and restated on September 4, 2003 (the "September 2003 Operating Agreement"). The September 2003 Operating Agreement is attached hereto as Exhibit A.

19. The September 2003 Operating Agreement states that the Smul Trust owns a 50% interest in RH Lodging, while CS-Graces owns the other 50%. See Exhibit A.

20. The business of RH Lodging, among other things, is to own and operate the RH Property. See Exhibit A at ¶ 4.

21. Alan Friedberg, an individual residing in New York, is named in the September 2003 Operating Agreement and, upon information and belief, has acted, at all times relevant to this Complaint, as one of the two managers of RH Lodging. Mr. Friedberg is the brother of Ms. Smul, the Trustee of the Smul Trust.

**Greenstreet loans $1,000,000.00 to Alan Friedberg and the Smul Trust guarantees the loan**

22. On December 22, 2004, Alan Friedberg and Greenstreet entered into a loan agreement (the "Loan Agreement"), under which Greenstreet agreed to lend $1,000,000.00 to Mr. Friedberg (the "Loan Transaction"). A copy of the Loan Agreement is attached hereto as Exhibit B.

3

23. On the same date, Mr. Friedberg executed a Note in favor of Greenstreet for the principal amount of $1,000,000.00. A copy of the Note is attached hereto as Exhibit C.

24. The Greenstreet Loan Transaction was guaranteed by the Smul Trust pursuant to a Guaranty. A copy of the Guaranty is attached hereto as Exhibit D.

**The Greenstreet Loan Transaction was secured by various collateral, including a 50% membership interest in RH Lodging**

25. The Greenstreet Loan Transaction was secured by a commercial security agreement dated December 22, 2004, and entered into by Ms. Smul as Trustee of the Smul Trust and Greenstreet as lender (the "Smul Security Agreement"). A copy of the Smul Security Agreement is attached hereto as Exhibit E.

26. Pursuant to the Smul Security Agreement, Ms. Smul, as Trustee of the Smul Trust, granted to Greenstreet a security interest in, among other property of the Trust, the following collateral: (1) the Smul Trust's 50% membership interest in RH Lodging (the "Smul LLC Interest"); and (2) all of the Smul Trust's interest in a certain note receivable of Peck/Jones Contractors, Inc. See Exhibit E at ¶ 1(b)(1). The Smul Security Agreement provides that the Smul Trust was not to "sell, offer to sell, consign or otherwise transfer or dispose of the Collateral." See Exhibit E at ¶ 2(j).

**Greenstreet perfects its security interest in the Smul LLC Interest and takes possession of the Original Certificate No. 2**

27. On January 5, 2005, Greenstreet filed a UCC financing statement with the Florida Security Transaction Registry (the "Financing Statement") in order to perfect its security interest in the Smul LLC Interest (and in the Smul Trust's interest in a certain note receivable of Peck/Jones Contractors, Inc.). A copy of the Financing Statement is attached hereto as Exhibit F.

28.  In connection with its pledge of collateral under the Smul Security Agreement, the Smul Trust delivered to Greenstreet an original membership certificate in RH Lodging certifying the Smul Trust's 50% membership interest in RH Lodging ("Original Certificate No. 2"). A copy of Original Certificate No. 2 is attached hereto as Exhibit G.

29.  On January 14, 2005, Mr. Friedberg, in his capacity as manager of RH Lodging and with apparent authority as such, acknowledged and certified that the Smul Trust delivered Original Certificate No. 2 to Greenstreet. A copy of the certification is attached hereto as Exhibit H.

30.  Greenstreet continues to hold physical possession of Original Certificate No. 2 in its office in Florida.

### Mr. Friedberg defaults on the Note and subsequently files for bankruptcy

31.  The Note provides that the maturity date of the Note will be the earlier of (i) the closing of the sale by Mr. Friedberg of the Leasehold interest in the residence located at 926 Fifth Avenue, New York, New York 10021, (ii) the sale or transfer of any of the Collateral as defined in the Friedberg Security Agreement, or (iii) December 31, 2005. *See* Exhibit C at page 2.

32.  The closing of the sale of the Leasehold interest in the residence located at 926 Fifth Avenue, New York, New York 10021 occurred on October 12, 2005, thus triggering the maturity date of the Note. Mr. Friedberg defaulted on the Note, as he failed to pay the full amount due under the Note on October 12, 2005 (the "Default Date") or at any time thereafter.

33.  As of the Default Date, the remaining balance on the $1,000,000 loan from Greenstreet to Mr. Friedberg was $500,000 of principal.

34. The Note provides that the principal amount outstanding under the Note shall bear interest at a fixed rate of 12% per annum. *See* Exhibit C at page 2.

35. The Note provides that, if the principal amount of the loan, interest and other amounts due under the Note are not paid on the Maturity Date, then such interest, principal and other amounts will bear interest at a rate of 24.5% per annum (the "Default Interest Rate").

36. The Note also provides that, in the event that any payment due under the Note is not received on or before 10 days after the due date, a late charge of 5% of the amount of such payment will accrue.

37. As of September 10, 2007, Mr. Friedberg owes Greenstreet $753,512.92 pursuant to the Note, which includes the total principal, interest, and late fees due. Interest on the total amount that Mr. Friedberg owes to Greenstreet as of September 10, 2007, will continue to accrue.

38. Pursuant to the Loan Agreement and the Note, Greenstreet in entitled to be reimbursed the legal expenses that it has incurred and will incur in its attempt to recoup the amount owing under the Note.

39. On January 20, 2006, Mr. Friedberg filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

40. Upon information and belief, Sheryl Smul, the trustee of the Smul Trust and Mr. Friedberg's sister, knew that Mr. Friedberg had filed a petition under Chapter 11.

41. Upon information and belief, RH Lodging and CS-Graces knew that Mr. Friedberg had filed a petition under Chapter 11.

42. On March 10, 2006, Greenstreet, through counsel, filed a proof of claim with respect to the outstanding amount due under the loan from Greenstreet to Mr. Friedberg in the United States Bankruptcy Court for the Southern District of New York.

43. On May 9, 2007, the United States Bankruptcy Court for the Southern District of New York entered an order dismissing the case commenced by Mr. Friedberg under Chapter 11 of the United States Bankruptcy Code.

44. Greenstreet incurred legal expenses related to Mr. Friedberg's petition for relief under Chapter 11 of the United States Bankruptcy Code, including, but not limited to, attorneys' fees associated with the filing of the proof of claim for the outstanding amount due under the loan from Greenstreet to Mr. Friedberg.

**Greenstreet acquires the right to foreclose on the Smul LLC Interest, as represented by Original Certificate No. 2, in order to satisfy the outstanding debt under the Note**

45. The Smul Security Agreement provides that, upon default by Mr. Friedberg, Greenstreet "may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral." *See* Exhibit E at ¶ 9(d).

46. The Note provides for waiver of "presentment for payment, demand, notice of demand, notice of non-payment and of dishonor, protest and notice of protest, and diligence in collecting this Note." *See* Exhibit C at ¶ 11.

47. The Smul Security Agreement provides that Greenstreet, may, upon default, "do whatever Lender in its sole discretion deems to be commercially reasonable to prepare any Collateral for disposition and to dispose of any Collateral." *See* Exhibit E at ¶ 9(b).

48. In addition, the Smul Security Agreement provides for the waiver of "demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment,

notice of any default, nonpayment at maturity, release, compromise, settlement, extension, or renewal of any or all commercial paper, accounts, documents, instruments, chattel paper, and guaranties at any time held by Lender on which Grantor may in any way be liable." *See* Exhibit E at ¶ 5.

49. As of the Default Date, Greenstreet acquired the right to foreclose on the Smul LLC Interest.

### Despite Greenstreet acquiring the right to foreclose on the Smul LLC Interest, the Smul Trust subsequently purported to sell the same Smul LLC Interest to CS-Graces

50. On January 30, 2006, the Smul Trust transferred the Smul LLC Interest to CS-Graces, the entity that owned the other 50% membership interest in RH Lodging, allegedly in exchange for the forgiveness of a debt and other consideration. This was improper because: (1) the Smul Trust had pledged its interest in RH Lodging to Greenstreet as collateral guaranteeing the loan from Greenstreet to Mr. Friedberg; (2) the Smul Security Agreement prohibited the Smul Trust from selling, offering to sell or otherwise transferring or disposing of the collateral it had pledged to Greenstreet; (3) Greenstreet obtained the right to acquire the Smul LLC Interest on October 12, 2005—when Mr. Friedberg defaulted on the Note—pursuant to Greenstreet's rights under the Guaranty and the Smul Security Agreement; and (4) the Smul Trust was aware that Mr. Friedberg had not fully satisfied his obligations to Greenstreet under the Loan Transaction and was also aware that transferring the Smul LLC Interest would render the Smul Trust unable to meet its obligations under the Smul Security Agreement.

51. The transfer of the Smul LLC Interest to CS-Graces is evidenced by a written agreement (the "CS-Graces Purchase Agreement"). The parties to the CS-Graces Purchase Agreement are the Smul Trust, RH Lodging and CS-Graces. The CS-Graces Purchase Agreement is attached hereto as Exhibit I.

52. Joseph Tso owns a 49% membership interest in CS-Graces, and, upon information and belief, makes decisions on behalf of that company. Upon information and belief, Mr. Tso is an experienced attorney and is a member of the Ellenville, New York law firm Kooperman, Kooperman & Tso, P.C.

53. Mr. Tso executed the CS-Graces Purchase Agreement on behalf of CS-Graces. He also signed the Agreement on behalf of RH Lodging as both a representative for CS-Graces, a member of RH Lodging, and in his individual capacity. *See* Exhibit I.

54. Despite Mr. Tso's legal savvy and years of experience, in conjunction with the purported transfer of the Smul Trust's interest in RH Lodging to CS-Graces, upon information and belief, Mr. Tso was aware that CS-Graces did not: (1) receive the Original Certificate No. 2 evidencing the Smul LLC Interest; or (2) obtain representations and warranties from the Smul Trust that it had the authority and the right to transfer or convey the Smul LLC Interest even though such representations and warranties are customary.

## CS-Graces knew or should have known that the Smul LLC Interest was pledged to Greenstreet as collateral guaranteeing Greenstreet's loan to Mr. Friedberg

55. Upon information and belief, Mr. Tso and CS-Graces were specifically informed, prior to the transfer of the Smul LLC Interest, that the Smul LLC Interest had been pledged as collateral in connection with the Loan Transaction.

56. The first sentence of the CS-Graces Purchase Agreement identifies the Smul Trust as a Florida trust. A standard and customary UCC search should have put CS-Graces on notice of the Greenstreet security interest in the Smul LLC Interest.

### CS-Graces refuses to acknowledge Greenstreet's 50% membership interest in RH Lodging

57. CS-Graces purported to have a 100% membership interest in RH Lodging, and now disputes that Greenstreet has any membership interest in RH Lodging, or any rights or interest in the Smul LLC Interest.

58. CS-Graces currently is operating RH Lodging with complete disregard for any ownership interest held by Greenstreet. While Greenstreet has requested in writing to inspect the books and records, as well as to receive an update of the operations and financial condition of RH Lodging, the Defendants have refused to make these available.

59. As a result of Defendants' wrongful conduct described herein, Greenstreet has been required to retain the undersigned counsel to represent it in this action and other legal actions designed to collect on the Greenstreet Loan Transaction and is obligated to pay them a reasonable fee for their services.

### Action in Florida State Court

60. Greenstreet, through counsel, sued CS-Graces, RH Lodging and the Smul Trust in the 11th Judicial Circuit in Miami-Dade County, Florida (the "Florida Action"). The Florida State Court held that Florida does not have personal jurisdiction over CS-Graces and RH Lodging; those parties were dismissed from the Florida Action. The Florida Action continues against the Smul Trust.

61. Greenstreet has incurred and continues to incur legal expenses related to the Florida action.

## AS AND FOR A FIRST CAUSE OF ACTION

### Foreclosure (against all Defendants)

62. Greenstreet realleges each and every allegation set forth in paragraphs 1 through 61 as if fully set forth herein.

63. This is an action to foreclose the Smul Security Agreement. *See* Exhibit E. On December 22, 2004, Mr. Friedberg executed and delivered to Greenstreet the Note in the amount of $1,000,000.00. *See* Exhibit C. The payment of this Note was guaranteed by the Smul Trust, pursuant to the Guaranty and the Smul Security Agreement. *See* Exhibits D and E.

64. The Greenstreet Loan was collateralized by the Smul LLC Interest, and the Original Certificate No. 2 evidencing the Smul LLC Interest was pledged to Greenstreet. *See* Exhibit E at ¶ 9.

65. Because the Smul LLC Interest is intangible property and the debtor, the Smul Trust, is located in the state of Florida, Greenstreet perfected its security interest by filing the Financing Statement, naming its security interest in the Smul LLC Interest, with the Florida Security Transaction Registry pursuant to Section 679.3011 of the Florida Statutes on January 5, 2005. *See* Exhibit F. Pursuant to the Smul Security Agreement, Greenstreet also took possession of Original Certificate No. 2.

66. Pursuant to the Note and the Guaranty, Greenstreet is entitle to reimbursement of attorneys' fees and costs that it incurs in order to collect what it is owed under the Loan Transaction.

67. On October 12, 2005, Mr. Friedberg defaulted on the Note and Greenstreet's rights under the Guaranty and the Smul Security Agreement with respect to the Smul LLC Interest matured.

68. On January 30, 2006, the Smul Trust, despite its knowledge of Greenstreet's security interest in the Smul LLC Interest, purported to transfer that very same interest to CS-Graces. *See* Exhibit I.

69.   The claim by CS-Graces to the Smul LLC Interest is subordinate to Greenstreet's properly perfected security interest.

70.   Greenstreet seeks to foreclose its perfected security interest in the Smul LLC Interest in order to recoup the principal, interest and penalty fees due on the Note and to recover all attorneys' fees it has expended thus far in attempting to collect the outstanding balance of the Greenstreet Loan Transaction.

## AS AND FOR A SECOND CAUSE OF ACTION

### Declaratory Judgment (against all Defendants)

71.   Greenstreet realleges each and every allegation set forth in paragraphs 1 through 70 as if fully set forth herein.

72.   This is an action for declaratory relief pursuant to 28 U.S.C. §2201 for the purpose of determining an actual, present, practical, and bona fide controversy between Greenstreet and CS-Graces concerning the Smul LLC Interest.

73.   On December 22, 2004, Mr. Friedberg executed and delivered the Note to Greenstreet in the amount of $1,000,000.00, and the Note was guaranteed by the Smul Trust pursuant to the Guaranty. *See* Exhibits D and E.

74.   The Greenstreet Loan was collateralized by the Smul LLC Interest. *See* Exhibit E at ¶ 9. Pursuant to the Smul Security Agreement, Greenstreet took possession of Original Certificate No. 2. *See* Exhibits H and I.

75.   Pursuant to Section 679.3011 of the Florida Statutes, on January 5, 2005, Greenstreet perfected its security interest by filing the Financing Statement, naming its security interest in the Smul LLC Interest, with the Florida Security Transaction Registry. *See* Exhibit F.

76. On October 12, 2005, Friedberg defaulted on the Note. Pursuant to the Guaranty and the Smul Security Agreement, on or about October 12, 2005 Greenstreet acquired the right to obtain the Smul LLC Interest.

77. On January 30, 2006, despite Greenstreet's right to the Smul LLC Interest, the Smul Trust purported to convey to the same Smul LLC Interest to CS-Graces. *See* Exhibit I.

78. Any interest in the Smul LLC Interest transferred to CS-Graces was inferior to Greenstreet's interest in the Smul LLC Interest.

79. Upon information and belief, CS-Graces claims that it owns 100% of the membership interest of RH Lodging and intends to sell the RH Property, which is a significant asset of RH Lodging.

80. There is a bona fide controversy between Greenstreet and Defendant CS-Graces as to their rights and interests in the Smul LLC Interest.

81. The antagonistic and adverse interests of persons that can claim an interest in the property in dispute are before this Court by proper process.

## AS AND FOR A THIRD CAUSE OF ACTION

### Accounting (against Defendant RH Lodging)

82. Greenstreet realleges each and every allegation set forth in paragraphs 1 through 81 above as if fully set forth herein.

83. Greenstreet, pursuant to the Smul Security Agreement, has a perfected security interest in the Smul LLC Interest, which represents a 50% membership interest in RH Lodging, and a right to foreclose on the Smul LLC Interest.

84. As a holder of this security interest in RH Lodging, Greenstreet has an interest in any assets RH Lodging has and any distributions made or to be made by RH Lodging, including

distributions of the proceeds generated from the sale or future sale of the RH Property or any other asset RH Lodging has.

85. Greenstreet is entitled to an accounting of the books and records of RH Lodging, including any financial records related to the sale of the RH Property, or other proceeds, disbursements, or revenues of RH Lodging.

86. On March 13, 2007, Greenstreet sent RH Lodging a written request for access to its books and records. A true and correct copy of the letter is attached hereto as Exhibit J. As of the date of this Complaint, RH Lodging has not complied with this request.

87. CS-Graces refuses to acknowledge Greenstreet's security interest in the Smul LLC Interest and claims to be the owner of 100% of the membership interest of RH Lodging.

88. Due to the dispute between Greenstreet and CS-Graces as to the Smul LLC Interest, Greenstreet requests this Court to order an accounting of RH Lodging's financial books and records in order to ensure that RH Lodging's assets are being honestly and economically managed and in order to preserve the value of Greenstreet's perfected security interest in the Smul LLC Interest.

89. There is no adequate remedy at law that will protect Greenstreet's financial interest in RH Lodging and ensure that RH Lodging's assets are preserved and managed in the best interest of all of the interested parties.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Tortious Interference (against all Defendants)

90. Greenstreet realleges each and every allegation set forth in paragraphs 1 through 89 as if fully set forth herein.

91. Greenstreet and the Smul Trust entered into the Smul Security Agreement, which granted Greenstreet a security interest in the Smul LLC Interest as collateral securing the $1,000.000 loan from Greenstreet to Mr. Friedberg.

92. The Smul Security Agreement provided that the Smul Trust was not to "sell, offer to sell, consign or otherwise transfer or dispose of the Collateral." *See* Exhibit E at ¶ 2(j).

93. Upon information and belief, CS-Graces and RH Lodging had knowledge of the Smul Security Agreement entered into by the Smul Trust and Greenstreet, which pledged the Smul Trust's 50% membership in RH Lodging to Greenstreet as collateral securing the loan from Greenstreet to Mr. Friedberg.

94. Upon information and belief, CS-Graces and RH Lodging had knowledge of Greenstreet's perfected security interest in the Smul LLC Interest before entering into their written agreement with the Smul Trust for the transfer of the Smul LLC Interest.

95. Despite their knowledge of the Smul Security Agreement and Greenstreet's perfected security interest in the Smul LLC Interest, on January 30, 2006, CS-Graces and RH Lodging entered into a written agreement with the Smul Trust for the transfer of the Smul LLC Interest to CS-Graces thereby intentionally and unjustifiably procuring a breach of the Smul Security Agreement. *See* Exhibit I.

96. Greenstreet has suffered damages and has incurred legal expenses as a result of CS-Graces and RH Lodging's deliberate and unjustifiable interference with the Smul Security Agreement.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Fraudulent Conveyance—New York Debtor & Creditor Law § 273

97. Greenstreet realleges each and every allegation set forth in paragraphs 1 through 96 as if fully set forth herein.

98. Greenstreet and the Smul Trust entered into the Smul Security Agreement, which granted Greenstreet a security interest in the Smul LLC Interest.

99. On October 12, 2005, Mr. Friedberg defaulted on the Note. Consequently, pursuant to the Guaranty and the Smul Security Agreement, Greenstreet acquired the right to foreclose on the Smul LLC Interest.

100. On January 30, 2006, despite Greenstreet's right to foreclose on the Smul LLC Interest and in direct violation of the Smul Security Agreement, the Smul Trust purported to convey the same interest in RH Lodging, a New York limited liability company, to CS-Graces, also a New York limited liability company. This transfer is evidenced by the CS-Graces Purchase Agreement. *See* Exhibit I.

101. Upon and information and belief, RH Lodging owns the Lodge at Rock Hill, a Catskills Mountains resort facility located on 55 acres of land in Rock Hill, New York, as well as a billboard located in Rock Hill, New York.

102. Upon information and belief, the Smul Trust did not receive fair consideration for the transfer of its 50% membership interest in RH Lodging (the Smul LLC interest) to CS-Graces.

103. Upon information and belief, the CS-Graces Purchase Agreement was drafted and entered into in the state of New York.

104. Upon and information and belief, the Smul Trust, by conveying the Smul LLC Interest to CS-Graces on or about January 30, 2006, became unable to satisfy its obligations under the Guaranty and was rendered insolvent.

105. Pursuant to New York state law, the transfer of the Smul LLC Interest from the Smul Trust to CS-Graces was fraudulent as to Greenstreet, a creditor of the Smul Trust, and may be set aside as a fraudulent conveyance.

### AS AND FOR A SIXTH CAUSE OF ACTION

**Fraudulent Conveyance—New York Debtor & Creditor Law § 275**

106. Greenstreet realleges each and every allegation set forth in paragraphs 1 through 105 as if fully set forth herein.

107. Greenstreet and the Smul Trust entered into the Smul Security Agreement, which granted Greenstreet a security interest in the Smul LLC Interest.

108. On October 12, 2005, Mr. Friedberg defaulted on the Note. Pursuant to the Guaranty and the Smul Security Agreement, on or about October 12, 2005, Greenstreet acquired the right to foreclose on the Smul LLC Interest.

109. On January 30, 2006, despite Greenstreet's right to foreclose on the Smul LLC Interest, the Smul Trust purported to convey to the same Smul LLC Interest to CS-Graces. *See* Exhibit I.

110. Upon and information and belief, RH Lodging owns the Lodge at Rock Hill, a Catskills Mountains resort facility located on 55 acres of land in Rock Hill, New York, as well as billboard located in Rock Hill, New York.

111. Upon information and belief, the Smul Trust did not receive fair consideration for the transfer of its 50% membership interest in RH Lodging (the Smul LLC interest) to CS-Graces.

112. Upon information and belief, the Smul Trust intended or believed or reasonably should have believed that by transferring the Smul LLC Interest to CS-Graces it would incur debts beyond its ability to pay them as they became due.

113. Pursuant to New York state law, the transfer of the Smul LLC Interest to CS-Graces may be avoided and set aside as a fraudulent conveyance.

## AS AND FOR A SEVENTH CAUSE OF ACTION

**Fraudulent Conveyance—New York Debtor & Creditor Law § 276**

114. Greenstreet realleges each and every allegation set forth in paragraphs 1 through 113 as if fully set forth herein.

115. Greenstreet and the Smul Trust entered into the Smul Security Agreement, which granted Greenstreet a security interest in the Smul LLC Interest.

116. On October 12, 2005, Mr. Friedberg defaulted on the Note. Pursuant to the Guaranty and the Smul Security Agreement, on or about October 12, 2005, Greenstreet acquired the right to foreclose on the Smul LLC Interest.

117. On January 30, 2006, despite Greenstreet's right to foreclose on the Smul LLC Interest, the Smul Trust purported to convey the same Smul LLC Interest to CS-Graces. *See* Exhibit I.

118. Upon information and belief, the Smul Trust and CS-Graces knew that the Smul Trust had pledged the Smul LLC Interest as collateral when it guaranteed the $1,000,000 loan from Greenstreet to Mr. Friedberg.

119. Upon information and belief, the Smul Trust knew that Mr. Friedberg had defaulted on the Note.

120. Upon information and belief, the Smul Trust, which owned a 50% membership interest in RH Lodging, and CS-Graces, which owned the other 50% membership interest in RH Lodging, knew that Mr. Friedberg, one of the two managers of RH Lodging and the brother of the Smul Trust's trustee, had filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

121. Upon information and belief, the Smul LLC Interest was conveyed by the Smul Trust to CS-Graces with actual intent to hinder, delay or defraud Greenstreet and to prevent Greenstreet from foreclosing on the Smul LLC Interest.

122. Pursuant to New York state law, the transfer of the Smul LLC Interest to CS-Graces may be voided and set aside as a fraudulent conveyance.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Greenstreet respectfully asks this Court to enter judgment in its favor as follows:

1. On the First Cause of Action, foreclosing the Smul Security Agreement and awarding Greenstreet the full amount due to it under the Note, including all attorneys' fees, penalty fees, costs, interest, and any other relief this Court deems just and proper.

2. On the Second Cause of Action, (1) declaring that Greenstreet's claim to the Smul LLC Interest is superior to any claim by CS-Graces; (2) directing that the proceeds from any distributions, including from a sale of the RH Property, by RH Lodging be deposited with the Court until a declaration is made as to the respective claims of Greenstreet and CS-Graces in the

Smul LLC Interest; and (3) granting attorneys' fees, costs, and any other relief this Court deems just and proper.

3. On the Third Cause of Action, requiring RH Lodging to permit Greenstreet to undertake an accounting of the records of RH Lodging as well as costs and any other relief this Court deems just and proper.

4. On the Fourth Cause of Action, awarding Greenstreet compensatory damages plus interest and costs, punitive damages, and such other and further relief as the Court deems just and proper.

5. On the Fifth through Seventh Causes of Action, voiding the transfer of the Smul LLC interest to CS-Graces and directing that the Smul LLC interest, its proceeds or substitute property of equivalent value be transferred to Greenstreet for the purpose of realizing the value of the outstanding principal, interest, penalty fees and attorneys' fees due to Greenstreet.

6. Such other and further relief that this Court may deem just and proper.

Dated: New York, New York
September 12, 2007

KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP

_____
Robert Bergen, Esq. (RB 9157)
Rebecca L. Misner, Esq. (RM 8086)
599 Lexington Avenue
New York, New York 10022
Telephone: 212-536-3900
Facsimile: 212-536-3901
Email: robert.bergen@klgates.com
Email: rebecca.misner@klgates.com

*Attorneys for Plaintiff, Greenstreet Financial, L.P.*