Dec 14 05 05:00p                    STULLER & SILVER              (2  , 564-3757            P.16

revocation shall not affect or impair the obligations of any other Guarantor.

Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing the liability of Guarantor hereunder, Bank may, from time to time: compromise, settle, release, renew, extend the period of duration or the time for the payment or discharge of any or all of the Indebtedness; may refuse to enforce or may release all or any parties to any and all of the Indebtedness; may grant other indulgences to Debtor or others in respect of the Indebtedness; may amend or modify in any manner any documents or agreements relating to the Indebtedness (other than this Guaranty) and may hereafter enter into new agreements for which any or all of the Indebtedness may arise; may release, surrender, exchange, substitute, modify or impair any and all deposits and other property securing the Indebtedness or on which Bank may at any time have a lien; may refuse to enforce its rights, or may make any compromise or settlement or agreement therefor, in respect of any and all of such deposits and property, or with any party to the Indebtedness, or with any other person, firm or corporation whatsoever; may release or substitute any one or more of the endorsers or guarantors of the Indebtedness, whether parties to this Guaranty or not; may exchange, enforce, waive or release any security for any guaranty of the Indebtedness; and may call upon Guarantor to pay all or any part of the Indebtedness without being required to prosecute collection, enforcement or other remedies against Debtor or others who may be primarily or secondarily liable for all or any portion of the Indebtedness. Nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of the Indebtedness without deduction by reason of set off, defense or counterclaim.

Any and all present and future debts and obligations of Debtor to Guarantor are hereby postponed in favor of and subordinated to the full payment of the Indebtedness by Debtor to Bank, and, as additional security for this Guaranty, Guarantor hereby assigns to Bank all claims of any nature which Guarantor may now or hereafter have against Debtor. Until all of the Indebtedness shall have been paid in full, Guarantor shall have no right of subrogation, indemnity or reimbursement whatsoever and no right of recourse against or with respect to any assets or property of Debtor.

Guarantor hereby represents that he is fully aware of the financial condition of Debtor and delivers this Guaranty based solely upon his own independent investigation and in no part upon any representation or statement of Bank with respect thereto. Guarantor is in a position to and hereby assumes full responsibility for obtaining any additional information concerning Debtor's financial condition as he may deem material to his obligations hereunder, and Guarantor is not relying upon or expecting Bank to furnish him with any information in Bank's possession concerning Debtor's financial condition.

Guarantor represents, warrants and covenants to Bank as an inducement to Bank to grant credit to Debtor that, as of the date of this Guaranty, the fair saleable value of his assets exceeds his liabilities and that he is able to pay and does pay his liabilities as same mature; that the financial statement heretofore delivered to Bank accurately states his financial condition as of the date hereof; that all financial statements heretofore and hereafter furnished by him to Bank are and will be true and correct; that since the date of the financial statement last furnished by him to Bank there has been no material adverse change in his financial condition; that he will furnish Bank statements of his financial condition as of December of each year on a form identical to the form heretofore used; that he shall immediately give Bank written notice of any material adverse change in his financial condition, including but not limited to notice of litigation commenced, tax liens filed, defaults claimed under contracts and bankruptcy proceedings commenced by or against him and that he shall at such reasonable times as Bank requests furnish his current financial statements to Bank.

If Debtor shall dissolve or suspend its business operations, or if a proceeding is commenced by or

Dec 14 05 07:25p                          STUCKER & SILVER                          (212) 564-3757                p.1

against Debtor or any Guarantor under any provision of the federal bankruptcy laws, or if a receiver, trustee, or other custodian shall be appointed for any part of the assets of Debtor or any Guarantor, or if Debtor or any Guarantor shall make an assignment for the benefit of their respective creditors, or if Debtor shall be in default under any present or future agreement with Bank, then whether or not any such event shall occur at a time when any of the Indebtedness is otherwise due and payable, Bank may at its option and without notice declare the full amount of the Indebtedness to be due and payable and Guarantor agrees to pay to Bank upon demand the full amount of the Indebtedness as if the full amount thereof were then past due.

Any amount received by Bank from whatever source and applied by it toward the payment of the Indebtedness shall be applied in such order of application as Bank may from time to time elect.

No delay or failure on the part of Bank to exercise any right or remedy shall operate as a waiver thereof and no single or partial exercise by Bank of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

This Guaranty shall inure to the benefit of Bank, its successors and assigns, and shall be binding upon Guarantor, his heirs, executors, administrators, personal representatives, successors and assigns. If this Guaranty is signed by more than one Guarantor, then the term "Guarantor" as used herein shall be considered to be in the plural and each such Guarantor and their respective heirs, executors, administrators, personal representatives, successors and assigns shall be jointly and severally bound by and liable under all of the terms, covenants and conditions of this Guaranty. Notwithstanding the foregoing, the extent of each guarantor's liability under this Guaranty is limited to the percentage set forth after his or its name. As used herein, the words "he," "him," or "his" shall mean "she" or "her" as the context may require.

This Guaranty, all acts and transactions hereunder and the rights and obligations of the parties hereto, shall be governed, construed and interpreted according to the laws of the State of New York. Where possible each provision of this Guaranty shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

IN WITNESS WHEREOF, Guarantor, intending to be legally bound hereby, has signed and delivered this Guaranty, the ____ day of December, 2003.

Alan Friedberg (Guarantor)
926 Fifth Avenue
New York, New York 10021

Dec 14 05 06:18p

DEC-14-2005 13:52    STULOFF & SILVER    (212) 564-3757    P.2
                                         1 845 794 157    P.13

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF _____  )

On the 19th day of December, 2003, before me, the undersigned, personally appeared ALAN FRIEDBERG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Mona Brofman
Notary Public in the State
of New York Sullivan Co #891
Commission Expires 12/31/07

Dec 14 05 05:03p                    SHULLEP & SILVER           (2 ) 564-3757          P.13
                                                                1 845 754 1371   P.13

# SCHEDULE "B"

## AGREEMENT

This agreement dated as of the ____17th____ day of November, 2003 (the "Agreement") among Alan G. Friedberg ("Friedberg"), with a principal address of 926 Fifth Avenue, New York, New York; the Sheryl Smul Grantor Annuity Trust (the "Trust"), with a principal address of 12351 NW 2nd Street, Plantation, Florida; and Joe and Lana Tso ("Tso"), with a principal address of 47 North Main Street, Ellenville, New York.

## RECITALS

WHEREAS, Friedberg and Tso have entered into a loan agreement dated _____, 2003 with Hudson United Bank ("HUB") for a loan in the amount of $1,250,000;

WHEREAS, it is agreed that Tso shall receive the proceeds of the loan and Friedberg shall execute the loan agreement as co-borrower; and

WHEREAS, it is agreed that Tso shall transfer the proceeds of the loan to Friedberg.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, to induce Tso to execute, deliver and perform the loan agreement and the other loan documents and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Friedberg and Tso each hereby agree as follows:

1.  Grant of Security. Friedberg and the Trust hereby grant Tso a continuing security interest in all of their interest in RH Lodging Services, LLC, a limited liability company organized under the laws of the state of New York, with its principal place of business at 283 Rock Hill Drive, Rock Hill, New York (the "Lodge"), and all personal property and fixtures, whether now or hereafter existing or now owned or hereafter acquired (including without limitation, all equipment, furniture, fixtures, machines, building materials and items of personal property at any time and from time to time acquired by The Lodge) and wherever located; of every kind and description, tangible and intangible (the "Collateral"), including, without limitation, the following:

(a)  All equipment in all of its forms, wherever located, including, without limitation, all machinery and other goods, furniture, furnishings, fixtures, office supplies and other tangible personal property and all parts thereof and all accessions thereto, together with all parts, fittings, special tools, alterations, substitutions, replacements and accessions thereto;

(b)  All inventory in all of its forms, wherever located, including, without limitation, (i) all supplies, goods, incidentals, packaging materials and all other items which contribute to the finished product or to the promotion or sale thereof (ii) all raw materials and work in process, finished goods, and materials used or consumed in